<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LEON BERRY, | : | |
| Petitioner, | : | Civil Action No. 07-5965 (JAP) |
| v. | : | |
| THOMAS P. SULLIVAN, et al., | : | <u>**OPINION**</u> |
| Respondents. | : | |

**APPEARANCES**:

    LEON BERRY, #574488
    Northern State Prison
    P.O. Box 2300
    Newark, New Jersey  07114-2300
    Petitioner <u>Pro</u> <u>Se</u>

**Pisano**, District Judge.

Petitioner Leon Berry (hereinafter "Petitioner"), who is currently confined at Northern State Prison, filed a Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254 (hereinafter "Petition"), accompanying the Petition was his filing fee, as well as his application to proceed <u>in</u> <u>forma</u> <u>pauperis</u>.  For the reasons set forth below, the Court allows Petitioner to proceed in this action <u>in</u> <u>forma</u> <u>pauperis</u>, dismisses the Petition for failure to exhaust applicable remedies, and will direct the Clerk to refund Petitioner's filing fee as unnecessary in view of Petitioner's <u>in</u> <u>forma</u> <u>pauperis</u> status.

I. **BACKGROUND**

Petitioner is currently in the custody of the State of New Jersey serving a five-year sentence imposed on February 8, 2007 by a New Jersey state court. See Pet. at 15. This state-custody sentence resulted from charges that Petitioner violated the terms of his parole on a pre-existing state-imposed sentence (hereinafter "New Jersey Pre-existing Charges I"), as well as from Petitioner's New Jersey indictment on other state charges (hereinafter "New Jersey Pre-existing Charges II"). See id.

Petitioner asserts that, on October 27, 2005, while serving parole under his New Jersey Pre-existing Charges I, and while released on bail under his New Jersey Pre-existing Charges II, Petitioner was arrested by state police officers and charged with unlawful possession of a weapon (hereinafter "New Jersey Latest Charge"). See id. Petitioner further asserts that his New Jersey Latest Charge was dismissed on April 26, 2006, but the United States Department of Justice filed federal charges against Petitioner (hereinafter "Federal Charges") on the very same day, that is, April 26, 2006, on the basis of the events underlying Petitioner's New Jersey Latest Charge. See id.

After Petitioner and the federal government reached a plea agreement in respect of Petitioner's Federal Charges, and after Petitioner and the State of New Jersey reached a plea agreement in respect of Petitioner's New Jersey Pre-existing Charges I and II, this Court sentenced Petitioner to fifty months of imprisonment (with respect to Petitioner's Federal Charges), while the state court sentenced Petitioner to the five-year term Petitioner is currently serving. See id. This Court's sentencing took place on February 7, 2007, while the state sentencing took place on the next day, that is, on February 8, 2007. See id. Because this Court's

2

sentencing was already in existence at the time of Petitioner's sentencing at the state court and, apparently, was known to the state court, the state sentence provided that Petitioner's current state term should be served concurrently with his federal sentence.

> The closing parts of the Petition read as follows:
>
> The Federal Bureau of Prisons and/or the U.S. Department of Justice and/or whomever was responsible failed to arrange for [Petitioner's] transfer to a federal prison to commence serving the 50 month federal sentence. . . . [Petitioner] complained to the U.S. Marshal[] . . . that [Petitioner] should be in a federal prison serving 50 months. [Petitioner] received a response [from the Office of the U.S. Marshal reading]
>> Even though you were sentenced first by the federal [court], you are required to complete your state sentence prior to serving your federal sentence. The fact is that you were in state custody at the time of your [federal] sentence . . . doesn't automatically transfer [you] to federal custody.

Id. at 16. Contending that, at the time of this Court's sentencing, he should have been deemed to be in federal, rather than in state, custody, Petitioner asserts that "[t]he failure of the Federal Government to [take] custody [over Petitioner] render[ed his] plea agreement and sentence in the *state court* impossible to fulfill. . . . Similarly, [Petitioner's] negotiated reasonable expectations of the plea agreement in [this Court] has not been fulfilled." Id. at 17 (emphasis supplied).

## II. DISCUSSION

"Federal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face." McFarland v. Scott, 512 U.S. 849, 856 (1994); United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000); Siers v. Ryan, 773 F.2d 37, 45 (3d Cir. 1985), cert. denied, 490 U.S. 1025 (1989). Habeas Rule 4 requires the Court to examine a petition prior to ordering an answer and to summarily dismiss the petition "[i]f it plainly appears from the petition

3

and any attached exhibits that the petitioner is not entitled to relief in the district court." 28 U.S.C. § 2254 Rule 4 (amended Dec. 1, 2004), applicable to § 2241 petitions through Rule 1(b).

Petitioner's application, as drafted, leaves this Court to guess the nature of Petitioner's challenges. If this Court is to take, at face value, Petitioner's assertion that his application is a § 2254 petition, the Petition is subject to dismissal for failure to exhaust this claim in the state courts. Alternatively, if this Court construes Petitioner's application as a § 2241 petition, it would be subject to dismissal as unripe.[1]

### A. The Method to Calculate a Federal Sentence

18 U.S.C. § 3585(a) governs the date upon which a federal sentence commences. It provides:

>   (a)   Commencement of sentence. -- A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

18 U.S.C. § 3585(a). A Bureau of Prisons ("BOP") policy regarding the application of 18 U.S.C. § 3585(a) is set forth in Program Statement 5880.28, Sentence Computation Manual, Chapter 1.3 at 12-13. It instructs:

> If the prisoner is serving no other federal sentence at the time the sentence is imposed, and is in exclusive federal custody (not under the jurisdiction of a federal writ of habeas corpus ad prosequendum) at the time of sentencing on the basis of the conviction for which the sentence is imposed, the sentence commences on the date of imposition, even if a state sentence is running along concurrently.

---

[1] Finally, if this Court is to hypothesize that Petitioner wished to assert that *this Court improperly imposed Petitioner's sentence*, Petitioner's course of action is to file a § 2255 motion. However, no statement made in this Opinion should be construed as this Court's ruling as to the procedural propriety (or lack thereof) or substantive validity (or lack thereof) of such motion.

BOP Program Statement 5880.28, Chapt. 1.3 at 12.

That policy is an application of a common law doctrine regarding priority of custody that was adopted to provide an orderly method by which to prosecute an individual that has violated the law of more than one sovereign.  The doctrine was first recognized by the United States Supreme Court in Ponzi v. Fessenden, 258 U.S. 254 (1922).  See e.g., Bowman v. Wilson, 672 F.2d 1145, 1153-54 (3d Cir. 1982); Chambers v. Holland, 920 F. Supp. 618, 621 (M.D. Pa.), aff'd, 100 F.3d 946 (3d Cir. 1996).  In relevant part, the doctrine provides that the sovereign that first arrests an individual has primary control, or custody, over him.  That sovereign's claim over the individual has priority over all other sovereigns that subsequently arrest him, and it is entitled to have him serve a sentence it imposes before he serves a sentence imposed by any other jurisdiction.  See e.g., Bowman, 672 F.2d at 1153.  Primary custody remains vested in the sovereign that first arrests the individual until it "relinquishes its priority by, e.g., bail release, dismissal of the state charges, parole release, or expiration of the sentence."  Chambers, 920 F. Supp. at 622 (citations omitted).  The determination of priority of custody between a state and the federal government is to be resolved by the executive branches of the two sovereigns.  See United States v. Warren, 610 F.2d 680, 684-85 (9th Cir. 1980) (citing Ponzi, 258 U.S. at 261-62).  Notably, the doctrine was developed to promote comity, mutual assistance, and orderly procedure.  Moreover, its purpose is not to provide a prisoner with the means to avoid serving time on sentences to which he is subject.  See Bowman, 672 F.2d at 1153-54 (prisoners "are not the beneficiaries of the rule allocating priority of prosecution to the sovereignty which first takes custody of a person").

5

The BOP has incorporated that common law doctrine into its policies. Accordingly, when a federal district court sentences a prisoner who, at the time, is in the primary custody of a state, the prisoner generally will be returned to the state after federal sentencing, and the BOP will commence the prisoner's federal sentence when the state relinquishes its custody and releases the prisoner to federal custody. See 18 U.S.C. § 3585(a); see also BOP Program Statement 5880.28, Chapt. 1.3 at 12-13, 31-33. In contrast, when a prisoner is in the primary custody of the federal government on the date his federal sentence is imposed, the BOP will deem the sentence to have commenced on that date, "even if a state sentence is running along concurrently." BOP Program Statement 5880.28, Chapt. 1.3 at 12.

### B.  Petitioner's Application as a § 2254 Petition

As amended by the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254. A state prisoner shall "exhaust his state remedies" prior to bringing a habeas action. Exhaustion of state remedies has been required for more than a century, beginning with the Supreme Court's decision in Ex parte Royall, 117 U.S. 241 (1886). The exhaustion doctrine was first codified at 28 U.S.C. § 2254 in 1948, see Rose v. Lundy, 455 U.S. 509, 516-18 (1982), and more recently was the subject of significant revisions in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104-132, 110 Stat. 1214, 1217 (April 24, 1996).

6

The exhaustion requirement is intended to allow state courts the first opportunity to pass upon federal constitutional claims, in furtherance of the policies of comity and federalism. See Granberry v. Greer, 481 U.S. 129 (1987); Rose, 455 U.S. at 516-18. Exhaustion also has the practical effect of permitting development of a complete factual record in state court to aid the federal courts in their review.[2] See Rose, 455 U.S. at 519. In fact, Section 2254(b) provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that -
> (A)   the applicant has exhausted the remedies available in the courts of the State; or
> (B)
>    (i)   there is an absence of available State corrective process; or
>    (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1)(A) & (B); see also Henderson v. Frank, 155 F.3d 159, 164 (3d Cir. 1998); Lambert, 134 F.3d at 513; Toulson v. Beyer, 987 F.2d 984, 987-89 (3d Cir. 1993). Section 2254(c) further provides that "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

---

[2] The exhaustion doctrine is a "total" exhaustion rule. Therefore, a district court may not grant a writ of habeas corpus under § 2254 unless the petitioner has exhausted state court remedies for all grounds presented in the petition at every level of the State court or such process is unavailable or ineffective to protect the petitioner's rights. See 28 U.S.C. § 2254(b)(1)(A), (b)(1)(B); Rhines v. Weber, 544 U.S. 269 (2005); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997); see also Duckworth v. Serrano, 454 U.S. 1 (1981).

Here, the vague allegations against "whomever" set forth in the Petition do not clarify Petitioner's allegations against his state prison authorities. Hence, this Court hypothesizes that Petitioner envisioned two lines of allegations against the State of New Jersey: (a) if Petitioner asserted that he was in the primary custody of the federal government when this Court sentenced him, then Petitioner seems to allege that the State of New Jersey improperly obtained and continues to exercise its current custody over him; and (b) if Petitioner concedes that he was in the primary custody of the State of New Jersey when this Court sentenced him but the State failed to ensure that Petitioner's state sentence would run concurrently with the sentence imposed by this Court, then Petitioner seems to allege that the State of New Jersey improperly failed to seek BOP's designation of Petitioner's current place of confinement as federal prison.[3] However, because it is apparent from the face of the Petition that Petitioner did not present either the option (a) or the option (b) claims to all three levels of New Jersey state courts, and because New Jersey state courts are effective and may correct the error(s) if such were committed, this Court is

---

[3]
BOP's Program Statement 5160.05 provides that,

> [o]ccasionally, a Regional Office receives a request from a state jurisdiction indicating that the state and federal sentences are to be served concurrently, whether by state court order or department of corrections referral.
> (a)  The RISA will gather and review all information pertaining to the federal and state sentences. After reviewing this information carefully, if necessary, the RISA will correspond with the federal sentencing court to ascertain whether it has any objections to the federal and state sentences running concurrently. A courtesy copy of this correspondence will be forwarded to the appropriate U.S. Attorney.
> (b)  If the court has no objections, the state institution may be designated as the place to serve the federal sentence concurrently with the state sentence, according to the procedures detailed in this Program Statement.

BOP Program Statement 5160.05(9)(5).

constrained to dismiss Petitioner's § 2254 application without prejudice for failure to exhaust available state remedies.

### C. Petitioner's Application as a § 2241 Petition

Finally, if this Court is to construe the Petition as a § 2241 application, the Petition does not fare any better. Section 2241 of Title 28 of the United States Code provides in relevant part:

> (c) The writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2241(c)(3). It appears sufficiently clear from the face of the Petition that Petitioner's concern is that he would have to serve his federal sentence upon completion of his state sentence, and such scheme would prevent him from taking advantage of his state court's ruling that the state sentence should run concurrently to the federal one. Attempting to translate this concern into an actual allegation against federal authorities, this Court hypothesizes that Petitioner wished to allege BOP's failure to calculate his federal sentence as commencing on the date of this Court's sentencing, i.e., as a claim that his federal sentence has not begun running (or that his state incarceration would not be credited against his federal sentence).

Petitioner, however, provided this Court with no indication that the BOP actually failed to make such a calculation by designating his current place of confinement as a place for serving his federal sentence.[4] At this point, Petitioner offers this Court nothing but his concerns about his

---

[4] The BOP has limited authority to count custody time prior to commencement of the federal sentence that was also credited to a state sentence under the rulings of Barden v. Keohane, 921 F.2d 476 (3d Cir. 1991). In Barden, the Third Circuit granted the petitioner a writ of habeas corpus because the BOP mistakenly failed to recognize its power to designate a state facility nunc pro tunc as a place of federal confinement where the inmate could gain credit against his federal sentence for the time which the state ordered to run concurrently with the federal sentence. Since a federal
(continued...)

future or, at most, his conjecture about BOP's potential refusal to make such designation <u>nunc pro tunc</u> when Petitioner comes into BOP's custody.[5] In other words, Petitioner's claim that his federal sentence has not begun running (or that his state incarceration would not be credited against his federal sentence) is speculative at the instant juncture.

"The exercise of judicial power under Art. III of the Constitution depends on the existence of a case or controversy," and "a federal court [lacks] the power to render advisory opinions." <u>U.S. Nat'l Bank of Oregon v. Independent Ins. Agents of Am., Inc.</u>, 508 U.S. 439, 445 (1993 ) (quoting <u>Preiser v. Newkirk</u>, 422 U.S. 395, 401 (1975)); <u>see also</u> <u>Flast v. Cohen</u>, 392 U.S. 83, 97 (1968). As the Supreme Court explained in <u>Aetna Life Ins. Co. of Hartford, Conn. v. Haworth</u>, 300 U.S. 227, 240-41 (1937):

> A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. <u>United States v. Alaska S.S. Co.</u>, 253 U.S. 113, 116, 40 S. Ct. 448, 449, 64 L.Ed. 808. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. <u>South Spring Gold Co. v. Amador Gold Co.</u>, 145 U.S. 300, 301, 12 S. Ct. 921, 36 L.Ed. 712; <u>Fairchild v. Hughes</u>, 258 U.S. 126, 129, 42 S. Ct. 274, 275, 66 L.Ed. 499; <u>Massachusetts v. Mellon</u>, 262 U.S. 447, 487, 488, 43 S. Ct. 597, 601, 67 L.Ed. 1078. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished

---

[4](...continued)
sentence does not commence until "the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served," 18 U.S.C. § 3585(a), under normal circumstances, the BOP does not determine whether to give a prisoner credit until the prisoner is actually taken into federal custody.

[5] Petitioner relies on a hand-written note from a Deputy U.S. Marshal in support of his conjecture. However, the Office of the U.S. Marshal is not the entity charged with the duty of calculating federal sentences. This agency mandate is exclusive to the BOP.

>from an opinion advising what the law would be upon a hypothetical state of facts.

Here, the Petition indicates neither that the BOP was requested to designate Petitioner's current place of incarceration as a facility for service of his federal sentence, nor that it refused to make such a designation. Therefore, the Petition, if construed as a § 2241 application, should be dismissed as unripe for failure to meet the "case or controversy" requirement. Consequently, this Court will not re-characterize the Petition as a § 2241 application, since such re-characterization would be futile at the instant juncture.

### III. Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

11

Here, jurists of reason would not find the Court's procedural disposition of this case debatable. Accordingly, no certificate of appealability will issue.

## IV.  CONCLUSION

For the foregoing reasons, this Court finds that Petitioner has failed to exhaust his available state court remedies or to allege facts sufficient to excuse failure to exhaust.  Therefore, this Court will dismiss, without prejudice, the § 2254 habeas Petition for failure to exhaust available state court remedies.  No certificate of appealability will issue.  Petitioner will be refunded his filing fee.  An appropriate Order accompanies this Opinion.

      /s/ Joel A. Pisano
     **JOEL A. PISANO**
     **United States District Judge**

Dated: December 26, 2007